**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**Case No.**

**ELECTRONICALLY FILED**

KARIM CODRINGTON )
)
Plaintiff )
) CASE NO. 3:21-cv-665-RGJ
vs. )
) JUDGE:
OFFICER JAY DOLAK, )
INDIVIDUALLY AND IN HIS )
OFFICIAL CAPACITY AS A POLICE )
OFFICER OF LOUISVILLE METRO )
GOVERNMENT; )
)
And )
)
OFFICER TYLER BLISSETT, )
INDIVIDUALLY AND IN HIS )
OFFICIAL CAPACITY AS A POLICE )
OFFICER OF LOUISVILLE METRO )
GOVERNMENT; )
)
And )
)
OFFICER JOHN KIRK, )
INDIVIDUALLY AND IN HIS )
OFFICIAL CAPACITY AS A POLICE )
OFFICER OF LOUISVILLE METRO )
GOVERNMENT; )
)
And )
)
STEVE CONRAD )
INDIVIDUALLY AND IN HIS )
OFFICIAL CAPACITY AS CHIEF OF )
POLICE FOR LOUISVILLE METRO )
GOVERNMENT; )
)
And )
)
LOUISVILLE-JEFFERSON COUNTY )

METRO GOVERNMENT )
)
Defendants )
)
SERVE: )
)
Officer Jay Dolak )
Louisville Metro Police Department )
633 West Jefferson Street )
Louisville, KY 40202 )
)
And )
)
Officer Tyler Blissett )
Louisville Metro Police Department )
633 West Jefferson Street )
Louisville, KY 40202 )
)
And )
)
Officer John Kirk )
Louisville Metro Police Department )
633 West Jefferson Street )
Louisville, KY 40202 )
)
And )
)
Chief of Police Steve Conrad )
633 West Jefferson Street )
Louisville Metro Police Department )
Louisville, KY 40202 )
)
And )
)
Hon. Greg Fischer, Mayor )
527 West Jefferson Street )
Louisville, KY 40202 )
)
And )
)
Hon. Mike O'Connell )
Jefferson County Attorney )
600 West Jefferson Street, 2nd Floor )
Louisville, KY 40202 )

---

# COMPLAINT

INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. Sections 1983 and 1988 for violation of the Fourth and Fourteenth Amendments to the United States Constitution; Monell-Related Claims, Discrimination, Failure to Train, Failure to Intervene, Malicious Prosecution under 42 U.S.C. §1983, False Arrest under 42 U.S.C. §1983; and Kentucky State Law claims of Battery Claim, Malicious Prosecution, Trespass to Property Wrongful Taking/Conversion, Negligent Supervision and Training, Negligence.

2. This case involves the above listed claims against the above named Defendants, in which the named Defendants used Racially Biased Policing, and unlawfully seized, searched, arrested, and prosecuted Plaintiff for allegedly violating Kentucky Revised Statutes (KRS):

i. KRS 218A.1421- Comp Tics, - 1st degree, 1st offense (>= 2 GMS Methamphetamine);

ii. KRS 218A.1421(2)(A)- ENH Traffic In Marijuana, Less than 8 oz - 1st offense;

iii. KRS 524.100 Tampering With Physical Evidence;

iv. KRS 218A.500(2)- ENH Drug Paraphernalia - Buy/Possess; and

v. KRS 524.090 Loitering

3. The said Defendants also engaged in an unlawful taking of Plaintiff's monies and trespassed upon the privately-owned vehicle of Plaintiff and caused damages thereto.

**JURISDICTION**

4. The jurisdiction of this court invoked pursuant to the Civil Rights Act 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. §§ 1331, 1367, and 1343(a); the Constitution of the United States. Therefore, this Court has supplementary jurisdiction powers.

**VENUE**

5. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district, and the events giving rise to the claims asserted here occurred within this district.

**PARTIES**

6. Plaintiff Karim Codrington, also referred to herein as ("Mr. Codrington" and/or "Plaintiff"), is and at all times relevant to this action was a citizen of the United States of America and a resident of Louisville, Jefferson County, Kentucky.

7. Defendant Officer Jay Dolak, referred to herein as ("Officer Dolak") was at all times relevant to this action a duly appointed police officer employed by the city of Louisville-Metro Jefferson County.

8. Defendant Officer Tyler Blissett, referred to herein as ("Officer Blissett") was at all times relevant to this action a duly appointed police officer employed by the city of Louisville-Metro Jefferson County.

9. Defendant Officer John Kirk, referred to herein as ("Officer Kirk") was at all times relevant to this action a duly appointed police officer employed by the city of Louisville-Metro Jefferson County.

10. Defendants, Officer Dolak, Officer Blissett, and Officer Kirk, are also referred to herein collectively as ("Defendant Officers" or "Officers"), and were at all times mentioned in this Complaint on duty at all times relevant to this Complaint, duly appointed, and sworn police officers for the below named Defendant, Louisville-Metro Jefferson County. Defendant Officers engaged in the conduct complained of in the course and scope of their employment while on duty. Defendant Officers are also sued in their individual capacities.

11. Defendant Steve Conrad, is the former Chief of the Louisville Metro Police Department ("LMPD"), referred to herein as ("Defendant Chief" or "Chief Conrad" or "Chief") was at all times relevant to this action a duly appointed police officer and the chief of the LMPD which is maintained by the Defendant Louisville-Metro Jefferson County. Chief was employed by the Defendant Louisville-Metro Jefferson County at all times relevant to this action and said Defendant is also sued in his individual capacity.

12. Defendant Louisville-Metro Jefferson County referred to herein as ("Defendant City" or "City"), is a city in Kentucky and now, and at all times mentioned in this Complaint was, a municipal corporation organized and existing under the laws of the State of Kentucky, and maintains a police department named LMPD, with duly appointed police officers pursuant to the mandate laws of the State of Kentucky, as amended and the said Defendant is a city of the first class.

13. Defendants Officer Dolak, Officer Blissett, Officer Kirk, Chief, and City are referred to herein collectively as "Defendants".

**COMMON FACTUAL ALLEGATIONS**

14. All events complained of herein occurred in Jefferson County, Kentucky.

15. Upon information and belief, on or about August 10, 2018, Defendant Officer Dolak along with Defendant Officer Blissett were on patrol for the Louisville-Metro Police Department in Louisville, Jefferson County, Kentucky.

16. On the same said date, around 12:56 a.m., Mr. Codrington a thirty-two (32) year old African-American male, United States citizen, was driving his black Dodge Charger eastbound on Algonquin Parkway when he pulled into the lot of the Thornton's gas station located at the intersection of 7th Street and Algonquin Parkway and parked his vehicle adjacent to a gas pump.

17. The intersection of 7th Street and Algonquin Parkway in an areas that is predominantly black.

18. At the same time, Officer Dolak drove and parked his marked police cruiser at an angle behind Mr. Codrington's vehicle, blocking Mr. Codrington's path and Officer Bissett drove and parked his marked police cruiser in front of Mr. Codrington's vehicle, blocking Mr. Codrington's forward path.

19. Both said police officers had their police cruisers' spotlights directly illuminated on Mr. Codrington's vehicle.

20. Both said police officers exited their police cruisers.

21. Officer Dolak along with Officer Blissett simultaneously approached Mr. Codrington.

22. Officer Dolak immediately asked if there were any weapons in the car and

Mr. Codrington stated that he had a firearm.

23. At that time, Officer Dolak directed Mr. Codrington to exit the vehicle.

24. Mr. Codrington complied with Officer Dolak's order, by immediately opening his driver side door and exiting his vehicle.

25. Once Mr. Codrington exited his vehicle, he was immediately pat-down by Officer Blissett and ordered to put his hands on top of his vehicle's hood.

26. During the pat-down, Officer Blissett entered the pockets of Mr. Codrington's clothing.

27. Mr. Codrington was then ordered to move from the side of his vehicle to the rear-end of his vehicle.

28. Upon his approach of Mr. Codrington, Officer Dolak asked Mr. Codrington if he can go in side Mr. Codrington's vehicle.

29. Mr. Codrington denied Officer Dolak's request.

30. After refusing to give consent to any searches, the Defendant Officers further requested that Mr. Codrington provide them with his operator's license and his Carrying Concealed Deadly Weapon permit, and Mr. Codrington complied.

31. Mr. Codrington was then ordered to the front of Officer Doalk's police cruiser.

32. At this time, Defendant Officer Kirk along with his assigned K-9 officer, and additional unknown LMPD police officers arrived and approached Mr. Codrington.

33. After confirming the validity of the two licenses, Officer Dolak and Officer Blissett kept requesting permission to search Mr. Codrington's vehicle.

34. Again, Mr. Codrington kept refusing their requests.

35. After the Officers kept being denied legal entry into Mr. Codrington's vehicle, Officer Dolak became disgruntle and then asked Mr. Codrington for proof of automobile insurance.

36. Mr. Codrington attempted to provide his proof of insurance, but was barred by the Officers to produce such proof.

37. The Officers again requested consent to search the vehicle from Mr. Codrington, and Mr. Codrington again denied their request.

38. Officer Dolak refused to allow Mr. Codrington to produce the insurance card.

39. Again, after being denied consent to any searches Officer Dolak gave Mr. Codrington an ultimatum in which if the Officers were not allowed inside the vehicle then they would have to charge Mr. Codrington with the traffic violation of ―Failure to Produce an Insurance Card.

40. Officer Kirk then requested to search Mr. Codrington's vehicle with his K9, and again Mr. Codrington refused to consent to any searches.

41. After being denied consent to search Mr. Codrington's vehicle, Officer Kirk initiated, in accordance to LMPD's custom, at lease two false dog sniffs.

42. One of the said false dog sniff alerts was conducted by Officer Kirk throwing an object into Mr. Codrington's vehicle and causing the K9 to enter the said vehicle and retrieve the object.

43. Mr. Codrington was then handcuffed.

44. After Mr. Codrington was handcuffed, Officers Dolak and Kirk searched Mr.

Codrington's vehicle and the belongings within.

45. The search resulted in the said defendant Officers discovering a small amount of marijuana and cash, U.S. currency, totaling at least $50,000.00.

46. Mr. Codrington was then arrested, placed in the back of Officer Dolak's police cruiser and transported to the Louisville Metro Department of Corrections ("LMDC") for process.

47. Mr. Codrington's vehicle was towed by LMPD and impounded and held at the LMPD impoundment lot.

48. Mr. Codrington's vehicle was again searched and then damaged by LMPD or LMDC officers.

49. The Defendant Officers issued a Commonwealth of Kentucky Uniform Citation upon Mr. Codrington in an attempt to cover-up their illegal actions, and justify the stop, search, arrest, and prosecution of Mr. Codrington.

50. In that said citation, Mr. Codrington was charged with violating Kentucky Revised Statutes (KRS):

      i. KRS 218A.1421- Comp Tics, - 1st degree, 1st offense (>= 2 GMS Methamphetamine);

      ii. KRS 218A.1421(2)(A)- ENH Traffic In Marijuana, Less than 8 oz - 1st offense;

      iii. KRS 524.100 Tampering With Physical Evidence;

      iv. KRS 218A.500(2)- ENH Drug Paraphernalia - Buy/Possess; and

      v. KRS 524.090 Loitering

51. Mr. Codrington was transported to the Louisville Metro Department of

Corrections and held in a jail cell for at least a day before being arraigned in the Jefferson County District Court, on case *Commonwealth vs. Codrington, Kriam A.*, Case No: 18-F-014872 and subjected to a $2,500.00 cash bond.

52. On August 14, 2019, the Jefferson Circuit Court conducted a hearing in the case *Commonwealth vs. Codrngton, Karim A*, Case No: 19-CR-000467 for which some of the said Defendant Officers' actions were challenged.

53. Officer Dolak, in accordance to the Defendant City's custom (as alleged herein), presented false information to further support the unlawful actions of his and his fellow officers prior to, during, and following the stop, seizure, search, arrest, and criminal prosecution of Mr. Codrington by falsely asserting that the reason for the stop and search of Mr. Codrington was because he had concerns for Mr. Codrington's "wellness" in which Mr. Codirngton was distressed.

54. Officer Dolak's own actions during the traffic stop contradicted his testimony.

55. There were no such concerns ever expressed during previous testimonies by Defendant Officers.

56. After the stop had begun, additional Officers along with a K-9 dog arrived and after Officers claim the dog alerted, a search of the vehicle was conducted.

57. During direct examination, Officer Dolak testified that he "had already called for a K-9 dog" contrary to his answer when he was previous questioned by the Jefferson County Circuit Court as to why the K-9 was called and among other matters at issue.

58. There was no legal reason to stop and search Mr. Codrington.

59. There was no legal reason to stop and search Mr. Codrington in the manner that he was stopped and searched.

60. Officer Dolak's own actions during the traffic stop contradicted his testimony.

61. Defendant Officers proffered reasons for the initial stop was false and unlawful.

62. The Defendant Officers proffered reasons for the search and seizures that followed were unlawful.

63. On November 5, 2020, all of the charges were dismissed and the criminal action was also dismissed.

64. Once Mr. Codrington case was dismissed, he attempted to retrieve his monies and noticed that a total of at least $18,000.00 was missing.

65. Mr. Codrington requested from the Defendants that his monies be returned, but was denied.

66. Mr. Codrington hired an attorney whom appeared before the Kentucky Jefferson County District Court, in case *Commonwealth vs. Codrington, Kriam A.*, Case No: 18-F-014872, and Circuit Court, in case *Commonwealth vs. Codrngton, Karim A*, Case No: 19-CR-000467, many times in order to defend Mr. Codrington from the criminal prosecution initiated by Defendants to prove his innocence.

67. At all times material hereto, Mr. Codrington never consented to any searches.

68. Mr. Codrington complied to all the Officers' commands in response to the Defendant Officers' show of authority.

69. Mr. Codrington was unreasonably detained and falsely imprisoned for an

unreasonable period of time without freedom to move.

70. From 2015, LMPD has had a custom of using traffic stops as a pretext for further investigations as a tool for officers to try and address crimes that have nothing to do with traffic violations.

71. The Defendant City has a policy governing Biased Law Enforcement Practices in regards to Vehicle Stop Reporting Forms.

72. The Defendant City and Chief have knowingly allowed its officers to ignore its own policies against biased law Enforcement practices, in an effort to govern predominantly black areas within the city of Louisville.

73. In Louisville, 70 percent of the residents are white while roughly 20 percent are black, according to DATA USA that cited the US Census Bureau data from 2015. (DATA USA, *Jefferson County, KY*, https://datausa.io/profile/geo/jefferson-county-ky/#category_heritage (December 09, 2018)).

74. However, according to an article published on December 11, 2017, by the Courier-Journal, a local news media company, "Black drivers in Louisville were nearly twice as likely to have their car searched during routine traffic stops than white drivers in 2016, according to a study from the University of Louisville." (Courier-Journal, *Louisville Police Searched Black Drivers More Often Than White Drivers in 2016, Study Shows*, https://www.courier-journal.com/story/news/local/2017/12/11/louisville-police-searched-black-drivers-more-often-white-study/939673001/ (Published December 11, 2017, 12:38 p.m. EST; Last updated December 11, 2017 12:38 p.m. EST))

75. In September of 2018, the said Police Department was slammed for racial profiling after a black college president was pulled over by a white officer of the said Defendant City's police department for a minor improper turn and having plastic lining framing the out side edges of his license plate.  (DailyMail.com, *Kentucky police is slammed for racial profiling after black college president is pulled over by white cop for a minor improper turn and having plastic lining on his license plate,* https://www.dailymail.co.uk/news/article-6185169/Police-review-traffic-stop-black-college-president.html (Published September 19, 2018, 10:00 a.m. EST; Last updated September 19, 2018, 11:04 a.m. EST)).

76. Furthermore, according to the Courier Journal's analysis of 130,999 traffic stops in Louisville from 2016 to 2018 in which citations were issued, African Americans were disproportionately stopped and three times as likely to be searched as white drivers.  (Courier-Journal, *Black drivers in Louisville are searched nearly three times more than white motorists,* https://www.courier-journal.com/story/news/crime/2019/06/07/lmpd-data-shows-black-drivers-searched-far-more-than-whites/1369516001/ (Published June 07, 2019, 11:10 a.m. EST; Last updated June 08, 2019 4:15 p.m. EST))

77. Additionally, African-Americans in Jefferson County are seven (7) time more likely than whites to be subject to a traffic stop by LMPD and charged for a crime such as possession of marijuana, though African-Americans represented approximately 22.2% of the Louisville-Jefferson County's population. *Id.*

78. Moreover, in regards to how the Louisville Metro Police Department has

disproportionately stopped black drivers as to white drivers, the Defendant Chief has been quoted saying, "that in retrospect, routinely stopping motorists 'is something we should have done differently.'" *id*.

79. Following the said Police Department's reported disproportionate stops of black drivers as to white drivers, a Jefferson County Circuit Judge, in a criminal case, ruled that the Louisville police coerced an African American driver into an illegal traffic search for a gun. (Courier-Journal, *Louisville police coerced driver into illegal traffic search for gun, judge rules,* https://www.courier-journal.com/story/news/crime/2019/06/19/louisville-police-traffic-search-collapses-judges-ruling/1503367001/ (Published June 19, 2019, 7:48 p.m. EST; Last updated June 20, 2019 8:49 a.m. EST)).

80. In August of 2019, in an effort to address racial disparity in drug arrests and prosecution in the City of Louisville, Jefferson County, Kentucky, the Jefferson County Attorney's Office announced that its office will no longer prosecute people for possession of a small amount of marijuana when that is the only or primary charge. (Courier-Journal, *Possession of small amount of marijuana will no longer be prosecuted in Louisville,* https://www.courier-journal.com/story/news/politics/2019/08/28/jefferson-county-prosecutor-drops-small-marijuana-possession-cases-louisville-kentucky/2138978001/ (Published August 28, 2019, 9:15 a.m. EST; Last updated August 28, 2019 5:51 p.m. EST)); WDRB, *Some marijuana possession cases will no longer be prosecuted in Louisville*, https://www.wdrb.com/news/some-marijuana-possession-cases-will-no-longer-be-prosecuted-in-louisville/article_59e02192-c99e-11e9-9273-0f73bff5dae5.html (Published August 28, 2019,

9:15 a.m. EST; Last updated August 28, 2019 5:51 p.m. EST))

81. In August 2018, an African American couple was stopped by LMPD officer while driving home from church, for the driver's failure to his turn signal, and the said couple sued LMPD officers for the traffic stop alleging that the stop was conducted solely because they were black and in a nice car. (Courier-Journal, *Couple sues LMPD officers for traffic stop because they were 'black and in a nice car',* https://www.courier-journal.com/story/news/crime/2019/08/16/louisville-kentucky-police-officers-sued-couple-over-traffic-stop/2020800001/ (Published August 16, 2019, 7:49 .m. EST)); see, *Demetria Firman and Anthony Parker, Sr. vs. Steve Conrad, et. al.*, 3:19-CV-564-DJH (W.D. Ky., Louisville, (August 2019)).

82. In 2019, at least two criminal cases involving traffic stops of black drivers and one criminal case involving the stop of two black males walking, LMPD officers conducted searches in all of those stops and charges were filed from the results of those searches and then later those cases was dismissed from the Jefferson Circuit Court, with each following a stern order by the judges to suppress evidence obtained in what was ruled to be an illegal search by officers of the Louisville Metro Police Department in all of those cases. (Louisville Insight, https://louisvilleinsight.com/archived-news/judges-dismiss-criminal-cases-after-denouncing-illegal-searches-by-lmpds-ninth-mobile-division/ (Published June 24, 2019, 7:49 .m. EST)); see, *Commonwealth vs. Ballard, Miguel Angelo Jr*, 18-CR-002688 (Jefferson County, Ky. Cir. (Aug. 2019)), *Commonwealth vs. Henderson, Tyrellee J Jr*, 18-CR-002104 (Jefferson County, Ky. Cir. (July. 2018)) and *Commonwealth vs. Johnson-Trumbo, Garrett A.*, 17-CR-002435

(Jefferson County, Ky. Cir. (Dec. 2018))

83. In *Commonwealth vs. Johnson-Trumbo, Garrett A.*, the LMPD officers did not have reasonable suspicion to extend the traffic stop by calling in the K-9 unit, and the court in the said styled-case ordered that the gun found in the search be suppressed from the evidence in the case, and that order lead to the dismissal of the charge and the case. *Id*.

84. In *Commonwealth vs. Ballard, Miguel Angelo Jr*, 18-CR-002688 (Jefferson County, Ky. Cir. (Aug. 2019)), the said court determined that the LMPD officer coerced Mr. Ballard into agreeing to a search of his vehicle after asking several times and noting that the LMPD officer told Mr. Ballard during the stop that there were only two types of people who did not consent to a search —"assholes and people who have something to hide". *Id.*

85. Since January of 2019, there has been at least six (6) civil lawsuits filed asserting that that the Defendants, Chief Conrad and City, and the City's police officers, have violated African American drivers rights while initiating traffic stops. (See, *Shaun A. Wimberly, Sr. vs. Officer Miller, Louisville-Jefferson County Metro Government, et. al.*, 18-CI-007161 (Jefferson County, Ky. Cir. (Jan. 2019)); *Tae-Ahn Lea vs. Steve Conrad, et. al.*, 3:19-CV-419-RGJ (W.D. Ky., Louisville, (June 2019)); *Jamaj Johnson vs. Louisville-Jefferson County Metro Government, et. al.*, 3:19-CV-431-RGJ (W.D. Ky., Louisville, (June 2019)); *Demetria Firman and Anthony Parker, Sr. vs. Steve Conrad, et. al.*, 3:19-CV-564-DJH (W.D. Ky., Louisville, (August 2019); *Tyrone Daugherty vs. Chief Steve Conrad, et. al.*, 3:19-CV-00660-RGJ (W.D.

Ky., Louisville, (August 2019)); and *Thomas vs. Mayo, et. al.*, 3:21-CV-00549-RGJ (W.D. Ky., Louisville, (August 2021)).

86. In 2021, the Defendant City requested that the Hillard Heintze company conduct a review of the LMPD and that company concluded that Black drivers were 60% more likely to be stopped than one would expect from their percentage of population in compare to white drivers. (Louisvilleky.gov, Hillard Heintze Final Report, https://louisvilleky.gov/sites/default/files/2021-01/hillard-heintze-report.pdf (Published January 27, 2021); (WHAS 11, https://www.whas11.com/article/news/local/lmpd-black-louisville-residents-review/417-b70aa825-ac6b-4120-a2f6-9adc3e8285cc (Published January 29, 2021, 7:48 p.m. EST; Last updated January 29, 2011 9:00 p.m. EST))

87. LMPD and the Defendant City, became famous from the conduct of LMPD and the City during and after the shooting of Breonna Taylor, for which the said police department and the city was publicly charged for treating African-Americans differently because of their race than whites who were in similarly situations. (The Washington Post, https://www.washingtonpost.com/nation/2020/09/22/breonna-taylor-louisville-decision/ (Published September 22, 2020, 7:00 a.m. EST; Last updated September 22, 2020, 7:57 a.m. EST))

88. The conduct of the LMPD and the Defendant City resulted in the nation wide demand for justice to end discriminatory policing practices by the LMPD and other police departments nationwide. *Id*.

89. Upon information and belief, in a February 18, 2021 deposition, after being

questioned about how the Louisville Metro Police Department has disproportionately stopped black drivers as to white drivers, the Defendant Chief said that officers too often used minor traffic violations to search for drugs and that he had never looked at police traffic data to see if Black males were stopped and searched more ofter than white drivers.

90. In that said deposition, the Defendant Chief further stated that using traffic stops as a pretext for further investigations are tools officers have to try and address crimes that have nothing to do with traffic laws.

91. On April 26, 2021, during a historical announcement, The United States Department of Justice announced that the said agency has opened an investigation of the Defendant City and its police department (LMPD) by opening a pattern or practice investigation —led by the Civil Rights Division— into the City and the LMPD that will determine, along with other Constitutional issues, whether LMPD engages in unconstitutional stops, searches and seizures. (The United States Department of Justice, https://www.justice.gov/opa/pr/department-justice-announces-investigation-louisvillejefferson-county-metro-government-and (Monday, April 26, 2021); WHAS 11, https://www.whas11.com/article/news/local/lmpd-louisville-investigation-breonna-taylor-merrick-garland/417-3c43590a-4080-40f2-8954-026fdd7fb710 (Published April 26, 2021, 1:18 p.m. EST; Last updated April 26, 2021 11:33 p.m. EST); CBS News, https://www.cbsnews.com/news/justice-department-investigation-louisville-police/ (Published April 26, 2021, 4:00 p.m. EST; Last updated April 26, 2021, 6:53 p.m. EST).

92. In 2017, as regards to the case of *Shaun A. Wimberly, Sr. vs. Officer Miller, Louisville-Jefferson County Metro Government, et. al.*, 18-CI-007161 (Jefferson County, Ky. Cir. (Jan. 2019)), upon informant and belief, the officers that stopped the African-American motorist failed to document the stop as required by the Louisville Metro Police Department Standard Operation Procedures, Chapter: Field Operations, Subject: Biased Law Enforcement Practices, Section 8.8.7 Vehicle Stop Reporting Forms.

93. In 2018, as regards to the case of *Tae-Ahn Lea vs. Steve Conrad, et. al.*, 3:19-CV-419-RGJ (W.D. Ky., Louisville, (June 2019)), the Defendant Chief had ordered LMPD's Public Standards Unit ("PSU") to explore the legal basis for pulling the black driver from his car and searching him and his car with a K-9 in 2018.

94. The said investigation only investigated one of the two officers who stopped the black driver.

95. The other officer who was involved in stopping the black driver in 2018 and who was not being investigated told LMPD investigators that he did not know why his partner —who was the subject of the investigation— removed the black driver from his car or why that officer frisked the said driver.

96. The same said officer told investigators that pulling motorists out of cars was a "common practice".

97. The said investigation languished for nearly two years. LMPD did not investigate the actions of the officer, who handcuffed the said driver and called in the K-9 unit or looked into the actions of the other officers.

98. No disciplinary action was taken against any officer involved in that stop.

99. LMPD dropped the said probe into that stop, because the only officer it chose to investigate resigned to join another police department.

100. In another controversial traffic stop of a black driver and his passenger in 2018, *Tyrone Daugherty vs. Chief Steve Conrad, et. al.*, 3:19-CV-00660-RGJ (W.D. Ky., Louisville, (August 2019)), in which the driver denied consent several times prior to being removed from the vehicle, searched twice, forced to have their shoes removed and subject to a K-9 search, LMPD conducted an investigation into the police officers' actions before and during that said said stop.

101. The defendant Chief, exonerated those officers and the investigation concluded that no wrongdoing was done by the officers that was accused of racially biased policing before and during the traffic stop.

102. In, *Jamaj Johnson vs. Louisville-Jefferson County Metro Government, et. al.*, 3:19-CV-431-RGJ (W.D. Ky., Louisville, (June 2019)), another controversial traffic stop of a black driver and his passenger in 2018, in which the driver denied consent several times prior to being removed from the vehicle and he and his passenger was not allowed to produce his insurance card, searched, hand cuffed, and subject to a K-9 search, resulting in a negative result and the issued traffic violation dismissed after he hired an attorney.

103. In that said civil suit the black driver has also claim that the LMPD officers that conducted the stop and search unlawfully took his property during the search.

104. LMPD conducted no investigation in to that said stop.

**FIRST CAUSE OF ACTION**
Monell-Related Cause of Action
(Constitutional Violations Under 42 U.S.C.A. § 1983)

105. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

106. It is the custom, practice and policy of police officers and/or their supervisors/agents and/or other employees of the Defendant City's police department to perform the following acts and/or omissions in connection with traffic stops of African American drivers —in comparison to similarly situated white drivers— by:

(i) Preforming pretextual traffic stops in which police officers are stopping African American drivers because of their race for traffic violations, minor or otherwise, with or without reasonable suspicion of a traffic violation to justify a stop to investigate that violation, to allow the officers to conduct non-traffic violation investigations that are influenced exclusively by the race of the driver, in which the police officers unlawfully conduct searches of the drivers and their vehicles for separate and unrelated non-traffic suspected criminal offenses, that were subjectively formed solely from racially bias motivates. In other words, police officers are performing traffic stops of black drivers more than white drivers to search their persons and property for non-traffic violations, before observing a legitimate traffic violation or having any reasonable suspicion of a drug offense or other non-traffic suspicion violations;

(ii) Extending traffic stops of African American drivers absent reasonable suspicion of a drug offense, in order to conduct K-9 (dog) sniffs of the said drivers;

(iii) Arresting African American drivers absent probable cause;

(iv) Prosecuting African American drivers absent probable cause;

(v) Fabricating evidence to support the findings of reasonable suspicion for the stop and search of African American drivers;

(vi) Fabricating evidence to support the findings of probable cause for the arrest and prosecution of African American drivers, after targeting, stoping, and searching such drivers because of their race;

(vii) Coercing black drivers in agreements to search their persons, vehicle, and/or personal effects, after the drivers refuse to consent to any searches.

(viii) Failing to document required reports of traffic stops as required by LMPD policies;

(ix) Generate documentation to cover-up for racially biased policing and the misconduct of police officers;

(x) Supervisory individuals from the Defendant City fail to properly discipline officers from the police department that have committed acts of racially biased policing on others;

(xi) Supervisory individuals from Defendant City fail to properly investigate complaints of misconduct perpetrated by the Defendant City's police officers, on African American drivers;

(xii) Supervisory individuals from Defendant City "Rubber Stamped"

investigations of matters involving racially biased policing and the misconduct

of its police officers in stoping, investigating, searching, charging, arresting,

and prosecuting African American drivers; and

(xiii) Supervisory individuals from Defendant City "Rubber Stamped" and/or

ignored investigations of matters resulting from its police officers involvement

in racially biased policing and the following misconduct of its police officers

in prosecuting African American drivers.

107. A code of silence exists, between the officers of the Defendant City's police department so as to obstruct the legal process (preventing the free flow of honest information with regard to racially biased policing and acts of misconduct).

108. The Defendants, City and Chief, "Rubber Stamped" the practices and/or customs, as alleged above, by acquiescing to the said customs and practices of the officers and refusing and/or ignoring to conduct proper investigations into the alleged misconduct of its police officers accused of racially biased policing during traffic stops and prosecutions resulting from the stop of black drivers and their passengers.

109. Defendant Chief, has acted with deliberate indifference and reckless disregard by failing to properly insure that the wrongful conduct of his police staff is properly investigated and disciplined for committing racially bias policing towards others.

110. Defendant City is a duly incorporated municipal corporation and is the employer and principal of the Defendants Chief as well as the other officers referred to

in this Complaint, as indicated in the Monell claim alleged here.

111. At all times material to this Complaint, Defendants, Chief, Officer Dolak, Officer Blissett, and Officer Kirk, were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the Defendant City.

112.The custom, practice and policy of stopping African-American drivers, as alleged above herein, was the moving force of the violation of Mr. Codrington's federally protected rights as stated herein this Complaint.

113. The manner in which the Defendant City's LMPD police officers stop white drivers for traffic violations was dramatically different in the way that the Defendant Officers stopped Mr. Codrington while driving a vehicle within the city of Louisville, Jefferson County of Kentucky.

114. The Defendant City's police officers Defendants, Officer Dolak, Officer Blissett, and Officer Kirk, and other police officers conducted the traffic stop of Mr. Codrington in a dramatically different way compared to white drivers, operating a vehicle within the city of Louisville, Jefferson County, Kentucky.

115. Since 2015 through 2019, the actions of the Defendants', City, LMPD officers in stopping African-American drivers, as alleged above herein, in comparison to white drivers is dramatically different in which Black drivers were 60% more likely to be stopped.

116. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the actions of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair,

anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

117. The Defendant City's police officers engaged in the custom, practice and policy of stopping African-American drivers, as alleged above herein.

118. While engage in the said custom, practice and policy of stopping African-American drivers, as alleged above herein, the Defendants Officer Dolak, Officer Blissett, and Officer Kirk violated Mr. Codrington's federally protected rights and state rights as alleged herein.

119. The custom, practice and policy of stopping African-American drivers, as alleged above herein, was the proximate cause of the violation of Mr. Codrington's federally protected rights as alleged herein.

**SECOND CAUSE OF ACTION**

Discrimination Under 42 U.S.C.A. § 1983
Selective Enforcement
Violation of Civil Rights under Title 42 of the United States Code Annotated (U.S.C.A.) § 1983 and under the Fourth (4th) and Fourteenth (14th) Amendments to the United States Constitution

120. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

121. From the date of August 10, 2018, until the date of the filing of this Complaint, the Defendants, Officer Dolak, Officer Blissett, and Officer Kirk, actions of stopping, searching, arresting, and prosecuting Mr. Codrington was solely based on the

fact that Mr. Codrington was an African-American driver.

122. The actions of the said Defendants had a discriminatory effect, in which black drivers and their passengers are treated differently than white drivers and their passengers while driving through out the city of Louisville, Jefferson County, Kentucky.

123. The actions of the said Defendants was motivated by a discriminatory purpose of targeting crime in the areas that are predominantly African-American, in which the City's police department enacted the custom for the Defendant City's police department, LMPD, to target, stop, coerce black drivers in agreements to search their persons, vehicle, and/or personal effects after the said drivers refuse to consent to any searches, performing unlawful searches with K-9s, performing unlawful arrest and prosecution of African-American motorists, with or without reasonable suspicion of a traffic violation, and unlawfully extending the stops of the said motorists —absent reasonable suspicion— so the officers can conduct further investigations of the said motorists.

124. The Defendants, Officer Dolak, Officer Blissett, and Officer Kirk, chose to target Mr. Codrington because of his race, stopped him, coerced him in agreeing to search his persons, vehicle, and/or personal effects, handcuff Mr. Codrington, search his car and personal effects, search the same with a K-9, arrest and prosecute Mr. Codrington in the effort of targeting crime in the areas that are predominantly African-American.

125. The custom, practice and policy of stopping African-American drivers, as

alleged above herein, was the moving force of the violation of Mr. Codrington's federally protected rights as alleged herein this Complaint.

126. From 2015 until 2020, the actions of the Defendant's, City, LMPD officers in stopping African-American drivers, as alleged above herein, in comparison to white drivers is dramatically different, in which Black drivers were 60% more likely to be stopped.

127. The manner and treatment in which the Defendant City's LMPD police officers regulated white drivers is dramatically different from the way that the Defendant Officers regulated and stopped Mr. Codrington while driving a vehicle within the city of Louisville, Jefferson County of Kentucky.

128. The Defendant City's police officers Defendants, Officer Dolak, Officer Blissett, and Officer Kirk, and the other police officers conducted the traffic stop of Mr. Codrington in a dramatically different way as compared to white drivers, operating a vehicle within the city of Louisville, Jefferson County, Kentucky.

129. The selective enforcement of stopping African-American drivers, as alleged above herein, was the proximate cause of the violation of Mr. Codrington's federally and State protected rights as alleged herein.

130. The Defendant City's police officers engaged in the custom, practice and policy of stopping African-American drivers, as alleged above herein.

131. While engage in the said custom, practice and policy of stopping African-American drivers, as alleged above herein, the Defendants Officer Dolak, Officer Blissett, and Officer Kirk violated Mr. Codrington's federally and State protected rights

as alleged herein this Complaint.

132. The custom, practice, and policy of stopping African-American drivers, as alleged above herein, was the proximate cause of the violation of Mr. Codrington's Federally and State protected rights as alleged herein.

133. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the actions of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

**THIRD CAUSE OF ACTION**

UNLAWFUL SEARCH AND SEIZURE

(Constitutional Violations Under 42 U.S.C.A. § 1983)

Violation of Civil Rights under Title 42 of the United States Code Annotated (U.S.C.) § 1983 and under the Fourth (4th) and Fourteenth (14th) Amendments to the United States Constitution **(Against Defendants Officer Dolak, Officer Blissett and Officer Kirk)**

134. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

135. On or about August 10, 2018, Mr. Codrington possessed the rights guaranteed by the United States Constitution, including but not limited to the Fourth and Fourteenth Amendment rights against unlawful and unreasonable searches, seizures, and the right to be free from unlawful detention, searches, seizures, and/or arrest by police officers acting under the color of law.

136. On the same said date, Defendant Officers, acted with deliberate indifference

or with reckless disregard for Mr. Codrington's rights, by targeting him for his race.

137. On the same said date, Defendant Officers searched Mr. Codrington without probable cause, and illegally seized, detained and/or arrested Mr. Codrington with reckless disregard of his civil rights, as set forth in detail above herein.

138. Mr. Codrington is informed and believe and therefore allege that Defendants Officers engaged in the described unlawful acts against him, and facilitated, encouraged and/or instigated such unlawful, racially-motivated and unconstitutional acts, and failed to intervene to stop such acts, or render any assistance knowing the severity of the injustice being inflicted on him.

139. At the time of the described wrongful acts by Defendants, Plaintiff, Mr. Codrington, was not engaged in criminal activity of a nature to warrant his unreasonable search, seizure, or battery under the color of law made against him.

140. At the time of the wrongful acts, Mr. Codrington was not displaying any behavior to justify being forced out of his car and unreasonably detained and searched by Defendant Officers.

141. Moreover, the said Defendants lacked probable cause, reasonable suspicion or legal justification to detain, search, and/or arrest Mr. Codrington on any basis.

142. The unreasonable search and seizure of Mr. Codrington was entirely unjustified by any of the actions of Mr. Codrington, and constituted violations of his civil rights.

143. The unlawful detention, seizure, search, and/or arrest of Mr. Codrington was the proximate cause of the damages suffered by him.

144. The Defendant Officers acted specifically with the intent to deprive Mr. Codrington of the following rights under the United States Constitution:

    (a) Freedom from unreasonable searches;

    (b) Freedom from unreasonable seizures in the form of unlawful detention and/or arrest by police officers;

    (c) Freedom from a deprivation of Liberty without due process of law;

    (d) Freedom from maliciously being subjected to criminal proceedings; and

    (e) Freedom to move about freely as a citizen of the United States of America.

145. The Defendants subjected Mr. Codrington to the mentioned deprivations either by actual malice, deliberate indifference or reckless disregard for his rights under the United States Constitution and the laws of the state of Kentucky.

146. The Defendant Officers acted at all times knowing that their conduct went against the legal authorized practices, customs, procedures and policies of the Police Department of the Defendant City and was unlawful conduct in violation of the Fourth Amendment and Fourteenth Amendment and the laws of the state of Kentucky.

147. Defendant Officers knew that Defendant Chief and City, acting through the chief policymaker Defendant Chief, had ratified, condoned, and acquiesced to their specific acts of depriving citizens, such as the Plaintiff and others, of their Constitution rights and abusive conduct through unauthorized, yet established practices, customs and procedures and thus did not fear any repercussion from Defendant City, or Defendant Chief in taking the unlawful actions against Mr. Codrington.

148. As the direct and proximate cause of the mentioned acts of Defendants,

Plaintiff suffered psychological injury, physical injuries, and severe emotional distress.

149. By reason of the mentioned acts and omissions of Defendants, Mr. Codrington was caused to incur special damages, including medical expenses and loss of earnings, and general damages in an amount to be proved at trial.

150. The mentioned acts of Defendants were willful, wanton, malicious and oppressive, thus justifying the awarding of exemplary and punitive damages as to the individually-named Defendants.

151. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the actions of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

**FOURTH CAUSE OF ACTION**

(Constitutional Violations Under 42 U.S.C.A. § 1983)
42 U.S.C. § 1983 False Arrest/Imprisonment Claim
pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments
to the United States Constitution

152. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

153. On or about August 10, 2018, the Plaintiff was taken into custody by Defendant Officers, wrongfully and unlawfully lodged in the Jefferson County Correction Center.

154. That the arrest by the Defendants intentionally and/or willfully confined the Plaintiff, contrary to his will, and without authority of law, in a manner sufficient to interfere with their liberty.

155. Due to the unlawful detention, the Plaintiff was humiliated, frightened, shamed, and stripped of his dignity.

156. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the unlawful acts of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

## FIFTH CAUSE OF ACTION
(Constitutional Violations Under 42 U.S.C.A. § 1983)
Malicious Prosecution

157. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

158. The Defendant Officers, while acting under color of authority and knowing that it was reasonably foreseeable that their acts and omissions, including, but not limited to, knowingly or recklessly providing materially false and misleading, incomplete information and/or omitting material information to the prosecuting agencies for the purpose of having Mr. Codrington prosecuted for the said charges to cover-up their illegal acts, were the moving force behind the criminal prosecution to be commenced against Mr. Codrington for allegedly violating Kentucky Revised Statutes

(KRS):

     i. KRS 218A.1421- Comp Tics, - 1st degree, 1st offense (>= 2 GMS Methamphetamine);

    ii. KRS 218A.1421(2)(A)- ENH Traffic In Marijuana, Less than 8 oz - 1st offense;

   iii. KRS 524.100 Tampering With Physical Evidence;

   iv. KRS 218A.500(2)- ENH Drug Paraphernalia - Buy/Possess; and

    v. KRS 524.090 Loitering

159. Mr. Codrington was innocent of the said charges.

160. Said Defendants acted with malice, and in reckless disregard for the rights of Mr. Codrington, and without reasonable or probable cause, in their actions and omissions as the moving force in the prosecution of Mr. Codrington.

161. The said Defendants did not in good faith believe Mr. Codrington to be guilty of the crimes charged.

162. Defendants engaged in this malicious conduct with the purpose of depriving Mr. Codrington of his Constitutional rights to due process, be free of unlawful seizure and be free from maliciously being subjected to criminal proceedings under the Fourth (4th) and Fourteenth (14th) Amendments to the United States Constitution.

163. These actions, or inactions, of Defendant Officers were the moving force behind the prosecution of Mr. Codrington as alleged; and, as a result, Mr. Codrington has sustained, and will sustain, general and special damages as alleged, and has incurred attorney's fees, costs and expenses, including those as authorized by 42 U.S.C.A. § 1988, to an extent and in an amount subject to proof at trial.

164. Said Defendant Officers acts, as the moving force in instigating the criminal prosecution, were willful, wanton, malicious and oppressive, as alleged, and the resulting prosecution of Mr. Codrington was induced by fraud, perjury and fabricated evidence, and undertaken in bad faith, in complete disregard for the rights of Mr. Codrington.

165. These acts justify the award of punitive damages against said Defendants, and each of them, in an amount to be determined at trial.

166. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the unlawful acts of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

## SIXTH CAUSE OF ACTION
(Constitutional Violations Under 42 U.S.C.A. § 1983)
Failure to Train Under 42 U.S.C.A. § 1983

167. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

168. Defendants City and Chief, acting under the color of state law and through its Police Department's employees, agents, and/or representatives, intentionally and knowingly as an act of discrimination based on race, religion, ethnicity, and/or national origin, violated Mr. Codrington's constitutional rights.

169. Out of deliberate indifference and/or unofficial custom and policy, said

Defendants failed to adequately train or supervise the police officers as to the discrimination laws and what constitutes unlawful discriminatory conduct.

170. As a result, Mr. Codrington was detained without probable cause and searched for reasons devoid of any legitimate, nondiscriminatory concern.

171. Said Defendants should have known, trained, and instructed its employees, agents, and/or representatives to be aware that the act of driving while being an African-American male is not a security threat or a form of suspicious illegal activity.

172. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the unlawful acts of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

## SEVENTH CAUSE OF ACTION

Battery Claim Under Kentucky State Law

173. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

174. Defendant Officer Blissett intentionally grabbed Mr. Codrington's arms and handcuffed his hands behind his back, without consent and without justification.

175. Defendant Officer Blissett's conduct were in violation of Kentucky's law.

176. The mentioned actions of Officer Blissett was the direct and proximate cause of the violations set forth above.

177. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the unlawful acts of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

**EIGHTH CAUSE OF ACTION**

Kentucky False Arrest/Imprisonment Claim

178. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

179. The Defendant Officers acted by force or threats of force against the Plaintiff.

180. The said Defendants acted with intent to cause Plaintiff to be confined to an area certain.

181. The said Defendants arrested Plaintiff without a warrant.

182. The said Defendants' actions were not reasonable nor in good faith.

183. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the unlawful acts of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

**NINTH CAUSE OF ACTION**

Malicious Prosecution Under Kentucky State Law

184. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

185. On or about August 10, 2018, Defendant Officers, while acting under color of authority, were the moving force behind the criminal prosecution to be commenced against the Plaintiff for allegedly violating Kentucky Revised Statutes (KRS):

i. KRS 218A.1421- Comp Tics, - 1st degree, 1st offense (>= 2 GMS Methamphetamine);

ii. KRS 218A.1421(2)(A)- ENH Traffic In Marijuana, Less than 8 oz - 1st offense;

iii. KRS 524.100 Tampering With Physical Evidence;

iv. KRS 218A.500(2)- ENH Drug Paraphernalia - Buy/Possess; and

v. KRS 524.090 Loitering

186. As a result of their acts and omissions as stated herein this Complaint it was reasonably foreseeable that their acts and omissions would be relied upon to prosecute Mr. Codrington, even though the said Defendants knew that Mr. Codrington was factually innocent of the said charges.

187. Said Defendants acted with malice, and with reckless disregard for the rights of Mr. Codrington, despite the fact that they knew that Mr. Codrington was factually innocent of the said charges. Therefore they did not, and could not have, honestly, reasonably, and in good faith believe or believed Mr. Codrington to be guilty of the crimes charged.

188. Said Defendants' acts as the moving force in instigating the criminal prosecution were willful, wanton, malicious and oppressive, as alleged, and the resulting prosecution of Plaintiff was induced by fraud, perjury and fabricated evidence, and undertaken in bad faith in complete disregard for the rights of Mr. Codrington.

189. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the unlawful acts of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

**TENTH CAUSE OF ACTION**

Negligent Supervision and Training Under Kentucky State Law
(Against Defendant Chief)

190. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

191. Defendant Chief was the Chief of the police department and responsible for training and/or supervising officers of Defendant City.

192. As the Chief, said Defendant had a duty to exercise reasonable care in the hiring, retention and supervision of individuals who, because of their employment, may pose a threat of injury to members of the public.

193. Said Defendant breached his duty in the negligent and reckless supervision and training of Defendant Officers as it relates to the misconduct alleged herein this

Complaint.

194. Defendant Chief knew, or in the exercise of ordinary care should have known, of the incompetence, unfitness, and dangerous characteristics of Defendant Officers.

195. The incompetence and unfitness of Defendant Officers caused damages to Mr. Codrington.

196. The Defendant Cheif's negligence was a proximate cause of Mr. Codrington's injuries.

197. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the unlawful acts of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

**ELEVENTH CAUSE OF ACTION**

Negligence Under Kentucky State Law
(Against Defendant Chief)

198. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

199. Defendants Officers, and Chief owed a duty of care to Mr. Codrington to follow the proper law enforcement policies, procedures, and techniques, and to act as reasonable law enforcement officers would act under the same circumstances to ensure Mr. Codrington's rights are not infringed upon.

200. Defendants Chief and Officers breached this duty of care by:

  (a) Failing to follow standard law enforcement procedures and/or

  (b) In the alternative, without waiving the foregoing, failing to act as reasonable law enforcement officers would and should have under the same or similar circumstances.

201. Defendants Chief and the City owed a duty of care to hire, train, and supervise their subordinates present and during or participating in the detention, search, arrest, and prosecution of Mr. Codrington, and to take steps to prevent events such as what has occurred as stated herein this Complaint.

202. Mr. Codrington suffered damages as a result of the injury inflicted by the aforementioned breach of duty by the Defendants, in which that breach of duty was the actual and proximate cause of the injuries Mr. Codrington sustained and from which he continues to suffer.

203. In addition and in the alternative, the said Defendants breach of duty as above described, was so egregious that it rises to the level of gross negligence and supports an award of punitive as well as compensatory damages.

204. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the unlawful acts of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

**TWELFTH CAUSE OF ACTION**

Trespass to Property/Wrongful Taking/Conversion Under Kentucky State Law

205. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

206. On or about August 10, 2018, Plaintiff was the owner and in possession of the following-described personal property: $18,000.00 totaling in cash.

207. On the same said date, Defendant Officers, acted alone, or in complicity with others, and unlawfully took from Plaintiff's possession, and carried away, the above-described personal property.

208. Mr. Codrington has demanded from the Defendant Officers the return of his property, but was denied.

209. By reason of the unlawful taking and detention of the said property, Plaintiff has sustained the following damages:

(a) $18,000.00 in cash, which is the fair market value of the property; and

(b) $1,500.00 dollars, expended by Plaintiff in effort to regain possession of the said property.

210. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the unlawful acts of the Defendant Officers, Mr. Codrington has suffered the loss of use of his cash property and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at time of trial.

**THIRTEENTH CAUSE OF ACTION**

Kentucky Invasion of Privacy (False Light) Claim

211. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

212. The Defendants and, through their actions, placed Plaintiff in a false light to others.

213. The false light in which Plaintiff was placed would be highly offensive to a reasonable person and was highly offensive to Plaintiff.

214. The Defendants had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff was placed.

215. The Defendants, through their verbal and written statements concerning Plaintiff failed to exercise reasonable care and caution prior to publishing their statements.

216. In publishing these statements, the Defendants acted with malice toward Plaintiff.

217. As a result of these actions, Plaintiff sustained damages in excess of the jurisdictional limit of this court.

218. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the unlawful acts of the Defendant Officers, Mr. Codrington has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Mr. Codrington's damages in an amount to be proven at

time of trial.

**FOURTEENTH CAUSE OF ACTION**

(Constitutional Violations Under 42 U.S.C.A. § 1983)
42 U.S.C. § 1983 Fabrication of Evidence Claim
pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments
to the United States Constitution

219. Plaintiff reallege and incorporate by reference, as though fully set forth here, each and every allegation set forth in the above Paragraphs.

220. The Defendants, Officer Dolak, Officer Blissett and Officer Kirk knowingly fabricated evidence through out the criminal prosecution of the Plaintiff in which they fabricated evidence in support of the criminal citation and charges of the Plaintiff.

221. The Defendant, Officer Dolak, knowingly fabricated evidence through out the criminal prosecution of the Plaintiff in which he fabricated evidence during the hearing that was held in the Jefferson Circuit Court by falsely asserting that the reason for the stop and search of the Plaintiff was because he had concerns for Plaintiff's "wellness" in which the Plaintiff was distressed.

222. The testimony of Officer Dolak and the false K-9 sniff alerts by Officer Kirk were used against Plaintiff in support of the stop, search, charges, arrest, and prosecution of Plaintiff.

223. There is a reasonable likelihood that the false evidence could have affected the judgment of the jury or fact-finder.

224. Due to the actions of the said Defendants, the Plaintiff was unlawfully stopped, searched, charged, arrested, and prosecuted, and suffered humiliation, shame, and being frightened and stripped of his dignity.

225. As a direct and proximate result of said acts, indifference, custom, and policy established by Defendants City and Chief, and the unlawful acts of the Defendant Officers, the Plaintiff has suffered and will continue to suffer humiliation, shame, despair, anxiety while traveling, embarrassment, depression, mental pain, anguish, and injury to his reputation, all to Plaintiff's damages in an amount to be proven at time of trial.

**WHEREFORE**, Plaintiff demands judgement against the Defendants as follows:

1. Judgment against all named Defendants, jointly and severally, for his damages, together with interest and costs;

2. A trial by jury on all issues so triable;

3. Actual, Compensatory, Consequential, and all other allowable damages against Defendant in an amount yet to be determine;

4. Damages in the sum of $18,000.00 for the unlawful taking of his cash;

5. Compensation for violation of his constitutional rights, mental anguish, and humiliation;

6. Plaintiff hereby request reasonable attorney fees and costs associated with prosecuting his criminal action as said Defendants' violation of his constitutional right was oppressive, conniving, harsh, cruel, and/or tyrannical;

7. Plaintiff's cost in this action, including reasonable attorney's fees and costs as authorized by 42 U.S.C.A. § 1988;

8. For punitive damages in an amount sufficient to deter Defendants from continuing their course of conduct;

9. Leave to amend his Complaint; and

10. All other relief to which Plaintiff may appear entitled.

Date: November 3, 2021.

Respectfully Submitted,

/s/ Shaun A. Wimberly, Sr.
SHAUN A. WIMBERLY, SR.
Wimberly & Associates, PLLC.
325 West Main Street
Suite 1816 Waterfront Plaza
Louisville, KY. 40202
Office: (502) 208-1887
Fax: (502) 208-1858
***COUNSEL FOR PLAINTIFF***