CASE NO. 19-CR-0467

JEFFERSON CIRCUIT COURT
DIVISION ELEVEN (11)
JUDGE BRIAN C. EDWARDS

COMMONWEALTH OF KENTUCKY

PLAINTIFF

v.

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION
TO SUPPRESS EVIDENCE**

KARIM CODRINGTON

DEFENDANT

**\*\*\*\*\*\*\*\*\*\***

This matter comes before the Court on motion of the Defendant, Karim Codrington ("Mr. Codrington"), to suppress evidence obtained from the investigatory stop, search, and interrogation of Mr. Codrington. The Court conducted a supplemental hearing on August 14, 2019. Both parties argued their positions at the hearing and have briefed the issues. The Court now being sufficiently advised will grant the Motion to Suppress.

## BACKGROUND

Karim Codrington was arrested on August 10, 2018 and charged with Trafficking in a Controlled Substance Methamphetamine two (2) grams or more, Trafficking in a Controlled Substance classified as a Schedule I Hallucinogen (both while in possession of a firearm) Tampering with Physical Evidence, Illegal Possession of Drug Paraphernalia, and One Count of Loitering.

According to Officer Dolak of the Louisville Metro Police Department, prior to his arrest, Mr. Codrington was driving eastbound on Algonquin Parkway when he pulled into the lot of the Thornton's gas station located at the intersection of 7th Street Road and Algonquin Parkway and

parked near a gas pump. Officer Dolak then parked perpendicular to Mr. Codrington's vehicle and observed him sitting in the vehicle. Mr. Codrington began to leave the lot when Officer Dolak positioned his cruiser to block the Defendant from leaving and Officer Blissett positioned his vehicle to further blockade Mr. Codrington's exit. Officer Dolak along with Officer Blissett simultaneously approached Mr. Codrington. Officer Dolak immediately asked if there were any weapons in the car and Mr. Codrington stated that he had a firearm. At that time, Officer Dolak directed him to exit the vehicle.

Upon his approach of Mr. Codrington, Officer Dolak comments that he (Mr. Codrington) made a "furtive gesture" in touching the console. After the Officer explained the meaning of a furtive gesture Mr. Codrington explained that he was not putting anything in the console but was taking out a bottle of perfume, which the Officers later recovered. Prior to the conversation, Mr. Codrington provided Officer Dolak his operator's license and his Carrying Concealed Deadly Weapon permit. After confirming the validity of the two licenses, the Officers continued to request permission to remove the firearm from the vehicle. Mr. Codrington once again refused. Officer Dolak then asked for proof of insurance and Mr. Codrington stated that it was in the glove box or on his phone and offered to retrieve it. Officer Dolak refused to allow Mr. Codrington to retrieve the insurance card and stated that if the officers could not get in the car then they would have to charge him with Failure to Produce an Insurance Card.

Nine (9) minutes after the stop had begun, additional Officers along with a K-9 dog arrived and after Officers claim the dog alerted, a search of the vehicle was conducted. During direct examination, Officer Dolak testified that he "had already called for a K-9 dog" contrary to his answer when he was questioned by the Court. The body camera footage does not reveal an audible call for K-9.

Body camera footage showed that Officer Dolak approached behind the K-9 Officer at the time it appears the K-9 Officer threw an object into the vehicle and the dog entered the vehicle as a result. It is unclear if this is the instance which the officers refer to the dog alerting or otherwise. The search resulted in the Officers discovering a small amount of marijuana and a large sum of money.

Officer Dolak has acknowledged on his report, in his testimony during a probable cause hearing, and in his testimony before the Grand Jury that the purpose in stopping the Defendant was due to the appearance of drug trafficking. He testified and described the gas station as a "high crime area" and that gas stations are often used as a "cover" for drug trafficking. Officer Dolak also states during the Suppression Hearing that he had concerns for Mr. Codrington's "wellness" in the case that he was in distress. However, no such concerns were expressed during previous testimony by Officer Dolak.

Mr. Codrington contends that there was no reasonable articulable suspicion to stop and detain him, and even if one believed the stop was legal, Mr. Codrington was detained for an excessive amount of time. Therefore, based on these facts, Mr. Codrington asserts that even if the nine (9) minutes of detainment was not excessive, he should have been released after the officers' contact and investigation produced no basis to continue to detain him illegally. Mr. Codrington contends that the warrantless, nonconsensual search did not fall within an exception. He further contends that the initial interaction was not a wellness check. Because of the foregoing, Mr. Codrington has moved this Court to Suppress the evidence and statements obtained as a result of the "illegal search and seizure" pursuant to the Fruit of the Poisonous Tree Doctrine. The Commonwealth has responded to Defendant's motion and the Court has been fully advised by each party.

## STANDARD

The Fourth Amendment to the United States Constitution and Section Ten of the Kentucky Constitution generally prohibit unreasonable searches and seizures. The United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), held that brief investigatory stops are an exception to the warrant requirement. To be valid, the prosecution must show that the officer conducting the stop had an articulable, reasonable suspicion that a criminal offense had been or was about to be committed. *See Taylor v. Commonwealth*, Ky., 987 S.W.2d 302, 305 (1998). This standard "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Williams v. Commonwealth*, Ky., 147 S.W.3d 1, 5 (2004) (quoting *Illinois v. Wardlow*, 528 U.S. 119,123 (2000)). In evaluating whether there is reasonable suspicion, courts must consider the totality of the circumstances. *See Hampton v. Commonwealth*, Ky., 231 S.W.3d 740, 744 (2007) (citing *Wardlow*, 528 U.S. at 241-242). A warrantless search that is more extensive or intrusive than a pat-down for weapons incident to a *Terry* stop is illegal unless it is supported by probable cause. *Baltimore v. Commonwealth*, 119 S.W.3d 532 (Ky. App. 2003). There, the Court explained: "There are three types of interaction between police and citizens: consensual encounters, temporary detentions generally referred to as *Terry* stops, and arrests. The protections provided by the Fourth Amendment to the United States Constitution apply only to the latter two types.

Generally, under the Fourth Amendment, an official seizure of a person must be supported by probable cause, even if no formal arrest of the person is made. However, there are various narrow exceptions based on the extent and type of intrusion of personal liberty and the government interest involved. In the seminal case of *Terry v. Ohio*, the Supreme Court held that

a brief investigative stop, detention and frisk for weapons short of a traditional arrest based on

reasonable suspicion does not violate the Fourth Amendment. *Terry* recognized that as an initial

matter, there must be a "seizure" before the protections of the Fourth Amendment requiring the

lesser standard of reasonable suspicion are triggered. A police officer may approach a person,

identify himself as a police officer and ask a few questions without implicating

the Fourth Amendment. A "seizure" occurs when the police detain an individual under

circumstances where a reasonable person would feel that he or she is not at liberty to leave.

Where a seizure has occurred, 'if police have a reasonable suspicion grounded in specific and

articulable facts, that a person they encounter was involved in or is wanted in connection with a

completed felony, then they may make a *Terry* stop to investigate that suspicion. Evaluation of

the legitimacy of an investigative stop involves a two-part analysis. First, whether there is a

proper basis for the stop based on the police officer's awareness of specific and articulable facts

giving rise to reasonable suspicion. Second, whether the degree of intrusion was reasonably

related in scope to the justification for the stop." *Id.* at 537-38.


## Analysis

The Kentucky Court of Appeals in *Lane v. Commonwealth*, No. 2015-CA-001698-MR,

2016 Ky. App. LEXIS 184, at *1 (Ct. App. Nov. 4, 2016), held that a trial court erred when it

denied the defendant's motion to suppress evidence discovered in a traffic stop that involved a

K-9 walk-around of a defendant's motor-vehicle. The Court found that police conduct

constituted an impermissible extension of the duration of the stop and was unrelated to the traffic

offense. The Court further found that "neither the high crime area, defendant's nervous fumbling,

nor the officer's hunch" individually constituted a reasonable articulable suspicion of criminal activity, and there was no reasonable articulable suspicion of criminal activity warranting the dog sniff. From *Lane* it follows that during a traffic stop, police officers may conduct certain unrelated checks such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These are ordinary inquiries related to the traffic stop. A dog sniff, in stark contrast is a measure aimed at detecting evidence of additional criminal wrongdoing. Based on the holding in *Lane*, it also follows that because a dog sniff is not part of the ordinary inquiries, its inclusion in a traffic stop procedures cannot extend the time period for the stop, or, if it does, the dog sniff must have a causal relationship to the stop.

If a dog sniff occurs during a traffic stop, it may pass constitutional muster in one of three ways: If it is related to the offense for which the person was stopped; if it does not extend at all the time it takes to complete the traffic stop; or, if it is premised on probable cause or a reasonable articulable suspicion of drug-related activity. *See, e.g., Commonwealth v. Bucalo*, 422 S.W.3d 253 (Ky. 2013). In the instant case, Codrington was stopped for the purpose of conducting a wellness check, or in the alternative for a routine investigatory stop. Running the drug dog around the vehicle was in no way related to the purpose for which Codrington was detained. Thus, the first prong fails.

Officer Dolak based his reasonable articulable suspicion for conducting the initial stop on the nature of the Thornton's gas station and its alleged known use as a drug trafficking area. Officer Dolak stated that Mr. Codrington made gestures which seemed furitive in nature regarding his reaching toward the console of his vehicle. However, while "high crime area" factors into the contextual considerations of a reasonable articulable suspicion analysis, it alone

is not sufficient to create reasonable articulable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Likewise, nervousness alone is insufficient to give rise to reasonable suspicion. *Adkins v. Commonwealth*, 96 S.W.3d 779, 788 (Ky. 2003) (citing *United States v. Mcrae*, 81 F.3d 1528, 1534 n.4 (10th Cir. 1996)). None of the factors articulated by Officer Dolak constitute a reasonable articulable suspicion of criminal activity. Talking on the phone while sitting inside of a car that is parked next to a gas pump at a gas station does not create reasonable suspicion of criminal activity. On the contrary, it is normal behavior. The fact that upon being approached by the police, Mr. Codrington was observed holding a perfume bottle does nothing to further create reasonable suspicion of criminal activity. As in *Lane*, Mr. Codrington did not get out of his car and flee and did not attempt to drive off or conceal evidence. He was cooperative, did not appear under the influence of any intoxicants, was in possession of a valid license and had no outstanding warrants. In sum, there was no justifiable reason to approach, to prolong the post approach inquiry, to call for the K-9 unit, and to initiate a search of Mr. Codrington's vehicle.

### Conclusion and Order

The Court finds that the Commonwealth has failed to articulate a reasonable basis for the stop and subsequent investigative inquiry of Mr. Codrington. In addition the K-9 sniff of the vehicle was not related to the traffic stop, or wellness check, prolonged the traffic stop an estimated 9 minutes, and there was no reasonable articulable suspicion of criminal activity that justified running the drug dog around the vehicle. Mr. Codrington's constitutional right to be free from unreasonable searches and seizures was violated, and the resulting seizure was "fruit of the poisonous tree" that must be suppressed. *Wilson v. Commonwealth*, 37 S.W.3d 745, 748 (Ky. 2001).

## ORDER

**WHEREFORE IT IS HEREBY ORDERED AND ADJUDGED** that Defendant's

Motion to Suppress his Statement is **GRANTED**.

BRIAN C. EDWARDS, JUDGE
JEFFERSON CIRCUIT COURT

```
ENTERED iN COURT
DAVID L. NICHOLSON. CLERK

MAR 0 3 2020

BY_____
        DEPUTY CLERK
```

cc: Attorneys of record