UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KARIM CODRINGTON Plaintiff

v. Civil Action No. 3:21-cv-665-RGJ

OFFICER JAY DOLAK, ET AL. Defendants

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant Louisville-Jefferson County Metro Government ("Metro") moves for summary judgment as to Count 1, Plaintiff Karim Codrington's ("Codrington") § 1983 *Monell* claim. [DE 84]. Codrington responded [DE 89], and Metro replied [DE 91]. This matter is ripe. For the reasons below, Metro's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

This action arises from an investigative stop at a Louisville gas station that ended with Codrington's arrest. In August 2018, Codrington parked at a Thornton's gas station at the intersection of 7th Street and Algonquin Parkway. [DE 1 at 6]. Louisville Metro Police Department ("LMPD") Officers Jay Dolak ("Dolak") and Tyler Blissett ("Blissett") approached in their police cruisers and parked at an angle in front of and behind Codrington's vehicle, blocking him from driving away. [*Id.*]. When asked, Codrington said he had a firearm in his vehicle, and Dolak instructed him to exit the vehicle. [*Id.* at 6–7]. Blissett patted down Codrington, searched his pockets, and told him to move to the rear of Codrington's vehicle. [*Id.* at 7]. Codrington provided his driver's license and concealed carry permit. [*Id.*]. Throughout Codrington's interactions with Dolak and Blissett, he repeatedly refused requests to search his vehicle. [*Id.* at 6-8].

Officer John Kirk ("Kirk")—a "K-9 officer" who had arrived on the scene—initiated a K-9 sniff of the exterior of the vehicle. [*Id.*]. Kirk then indicated that the dog had alerted, and Codrington was handcuffed. [*Id.* at 8–9]. Dolak and Kirk searched Codrington's vehicle, finding marijuana and a large sum of cash which Codrington now claims totaled $50,000. [*Id.*]. The officers arrested Codrington and transported him to Louisville Metro Department of Corrections. [*Id.* at 9]. Upon arrival, Dolak discovered methamphetamine in the backseat of his police cruiser, which he believed Codrington had concealed on his person. [DE 40 at 302].

Codrington argues that the officers fabricated evidence in order to seize Codrington's cash, asserting that the canine's alert was staged by the officers and that the methamphetamine discovered by Dolak was planted. [*Id.* at 306–07]. Codrington also emphasizes that, after the arrest, Dolak provided the prosecuting attorney with an evidence photo of a handgun and magazine that were not seized from Codrington's car. [DE 40 at 302, 307; DE 39-7 at 278].

Codrington was charged with loitering, trafficking marijuana, drug paraphernalia, tampering with physical evidence, and possession of a controlled substance. [DE 26-1 at 110; DE 26-6 at 124]. After the Jefferson County Circuit Court suppressed the evidence discovered in the search, the charges against him were ultimately dismissed. [DE 1 at 11; DE 26-6 at 124].

In his Complaint, Codrington raised several 42 U.S.C. § 1983 claims against the officers involved for (1) selective enforcement, (2) unlawful search and seizure, (3) false arrest, (4) malicious prosecution, (5) failure to train, and (6) fabrication of evidence. [DE 1 at 25–35, 43–44]. Codrington also raised a § 1983 claim based on *Monell* against Metro, alleging that Metro had a policy of racially motivated traffic stops and inadequate training which caused the violations of Codrington's rights. [DE 1 at 21–25; 34–35].

In April 2024, this Court granted summary judgment in the defendants' favor on all claims. *See Codrington v. Dolak*, No. 3:21-CV-665-RGJ, 2024 WL 1837979 (W.D. Ky. Apr. 26, 2024), *aff'd in part, vacated in part, remanded*, 142 F.4th 884 (6th Cir. 2025) [DE 68]. Because defendants were entitled to summary judgment on all of Codrington's claims of rights violations, this Court did not reach the merits of Codrington's *Monell* claim against Metro, reasoning that "[t]here can be no liability under *Monell* without an underlying constitutional violation." [DE 68 at 795, quoting *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023)].

The Sixth Circuit affirmed the dismissal of all of Codrington's claims except his fabrication-of-evidence and *Monell* claims. *See Codrington v. Dolak*, 142 F.4th 884 (6th Cir. 2025). Regarding Codrington's fabrication-of-evidence claim, the court explained that Codrington had produced sufficient evidence to create a genuine dispute of material fact and avoid dismissal on summary judgment. *Id.* at 894. Because this Court's reasoning in dismissing Codrington's *Monell* claim against Metro was based on the determination that all of Codrington's claims alleging a rights violation failed, after reviving Codrington's fabrication-of-evidence claim, the Sixth Circuit vacated this Court's conclusions on Codrington's *Monell* claim and remanded for this Court to consider it in the first instance. *Id.* at 896. Metro now moves for summary judgment on Codrington's *Monell* claim. [DE 84].

## II. STANDARD

### A. Summary Judgment.

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies

this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B).

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. Pro. 56(c)(1)(A)–(B); *see also Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

B. Claims under *Monell v. Department of Social Services*.

A municipal government may be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his or her civil rights were violated "as a direct result of a municipality's policy or custom." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). Accordingly, "[t]here can be no liability under *Monell* without an underlying constitutional violation.'" *Chambers*, 63 F.4th at 1101–02 (6th Cir. 2023) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)).

A plaintiff generally has four ways to establish a municipal entity's unlawful policy or custom: "[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Even after showing an unlawful policy or custom, a "plaintiff must also demonstrate a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the 'moving force' behind the violation." *Id.* (cleaned up).

## III. DISCUSSION

Given that only Codrington's fabrication-of-evidence claim remains, fabrication of evidence is the only rights violation which can underlie Codrington's *Monell* claim against Metro. *See Chambers*, 63 F.4th at 1101–02 ("[t]here can be no liability under *Monell* without an underlying constitutional violation") (quoting *Robertson*, 753 F.3d at 622).

Metro argues that it is entitled to summary judgment on the remaining *Monell* claim because Codrington cannot point to evidence showing that Metro had an unlawful policy or custom

or that such a policy was the moving force behind Codrington's alleged fabrication-of-evidence constitutional violation. Fed. R. Civ. P. 56(c)(1)(B); [DE 84 at 976–77; DE 91 at 1106]. Codrington argues that Metro had (1) "a custom of inadequate training and supervision" and (2) a "custom of tolerating fabricated evidence." [DE 89 at 991]. Thus, Codrington seeks to establish an unlawful policy according to the third ("inadequate training or supervision") or fourth ("tolerance or acquiescence of federal rights violations") path under *Spears*. *Spears* 589 F.3d at 256.

A. <u>Whether Codrington Provides Evidence That Metro Had a Policy of Inadequate Training or Supervision</u>.

The Supreme Court has cautioned that "a municipality's culpability for a deprivation of right is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish a municipality's policy of inadequate training or supervision, a plaintiff must prove "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ouza v. City of Dearborn, Michigan*, 969 F.3d 265, 286–87 (6th Cir. 2020) (quoting *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)).

A plaintiff can demonstrate deliberate indifference "by showing that the municipality has failed to act 'in response to repeated complaints of constitutional violations by its officers.'" *Id. at* 287 (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). Furthermore, the similarity must be "particularized," that is, "the prior examples of wrongdoing must violate the *same* constitutional rights and violate them *in the same way*." *Berry v. Delaware Cnty. Sheriff's*

*Off.*, 796 F. App'x 857, 862–63 (6th Cir. 2019) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014)) (emphasis added).

In a "narrow range of circumstances," however, a plaintiff can establish deliberate indifference without pointing to a pattern of similar rights violations. *Ouza*, 969 F.3d at 287 (quoting *Brown*, 520 U.S. at 409)). Under this approach, a plaintiff can show deliberate indifference based on a single incident if "the risk of the constitutional violation is so obvious or foreseeable that it amounts to deliberate indifference for the city to fail to prepare officers for it." *Id.* at 288. The Sixth Circuit found such an instance of single-incident liability in *Ouza v. City of Dearborn Heights, Michigan*. *See id.* In that case, the court held that "[t]he failure to provide any training on probable cause determinations or use of force (including handcuffing technique) . . . . may amount to deliberate indifference[.]" *Id.* at 289. In comparison, the Sixth Circuit declined to find single-incident liability in *Gambrel v. Knox County, Kentucky*, where the plaintiff alleged that two officers "gratuitously beat [the plaintiff's son]" and that one of the officers "shot him for no reason." *Gambrel v. Knox Cnty., Kentucky*, 25 F.4th 391, 410 (6th Cir. 2022). The *Gambrel* court reasoned that the "need for training against this allegedly intentional misconduct was not 'obvious'" because "'even an untrained' officer – let alone one trained at the academy – would know that wanton violence 'was inappropriate.'" *Id.* (citing *Waller v. City & County of Denver*, 932 F.3d 1277, 1288 (10th Cir. 2019) and *Flores v. County. of Los Angeles*, 758 F.3d 1154, 1160 (9th Cir. 2014)). In short, the inappropriateness of the officers' conduct was "self-evident." *Id.* at 412 (quoting *Kobrick v. Stevens*, 763 F. App'x 216, 221 (3rd Cir. 2019)).

Here, Codrington does not provide evidence that Metro had "failed to act in response to repeated complaints of constitutional violations by its officers." *Ouza* at 287. In addition to pointing to the violation of his rights in his own case [DE 89 at 989–990], Codrington cites several

sources which go toward establishing, in sum, that Metro and LMPD had failed to train and supervise LMPD officers generally regarding constitutional requirements. Codrington cites the testimony of former LMPD Chief Steve Conrad, which he contends "reveals a systemic failure by Metro to adequately train and supervise its officers regarding constitutional requirements." [*Id.* at 991]. Codrington further points to a federal Department of Justice report for several findings: (1) that there were "systemic deficiencies in LMPD's training and supervision, which directly contributed to constitutional violations," (2) that the LMPD K-9 unit had "significant training deficiencies," and (3) that the K-9 unit's "policy was deficient, failing to mention the word 'bite' or provide guidance on the constitutional limits of deploying dogs." [*Id.*].

However, none of this evidence goes toward establishing "a pattern of similar constitutional violations." *Connick*, 563 U.S. at 62. To establish a pattern for the purposes of showing deliberate indifference, prior examples must "violate the *same* constitutional rights and violate them *in the same way*." *Berry*, 796 F. App'x at 862–63. Accordingly, Codrington must show prior examples of LMPD officers violating individuals' rights by fabricating evidence. While Codrington provides evidence which might go towards a finding that LMPD had a pattern of constitutional violations *in general*, none of Codrington's evidence shows a pattern of fabrication of evidence *in particular*. Accordingly, Codrington produces no evidence to show the pattern of similar constitutional violations "ordinarily necessary" to show Metro's deliberate indifference. *Connick*, 563 U.S. at 62.

Nor does Codrington provide evidence which can establish deliberate indifference under the "narrow" single-incident theory. *Ouza*, 969 F.3d at 287. Codrington does not contend or provide evidence that LMPD failed to provide officers with any training communicating that they should not knowingly fabricate evidence to frame people for crimes they did not commit. This fact

alone distinguishes Codrington's case from the facts of *Ouza*, where the Sixth Circuit found single-incident deliberate indifference because officers received no training on probable cause determinations or the use of force. *Id.* at 289. Instead, Codrington's situation is akin to the facts of *Gambrel* in that the wrongness of the officers' alleged actions was "self-evident." *Gambrel*, 25 F.4th at 411. Just like the gratuitous and unprovoked beating and shooting in *Gambrel*, even an untrained officer would know that knowingly falsifying evidence to frame a person is inappropriate. *See id.* at 410. Under *Gambrel*, this constitutional violation would not be "so obvious or foreseeable" that it amounted to deliberate indifference for Metro to fail to prepare officers for it. *Ouza*, 969 F.3d at 288; *see also Gambrel*, 25 F.4th at 410. Codrington cannot, therefore, show Metro's deliberate indifference under the single-incident theory.

Because Codrington has not provided evidence which could support a finding of deliberate indifference by Metro, a required element to prove Metro had a policy of inadequate training or supervision, there is no genuine dispute as to whether Metro had a policy of inadequate training or supervision.

B. <u>Whether Codrington Provides Evidence That Metro Had a Custom of Tolerance or Acquiescence of Federal Rights Violations</u>.

To establish a municipal entity's unlawful custom of tolerance or acquiescence of federal rights violations, a plaintiff

> must show (1) the existence of a clear and persistent pattern of [wrongdoing]; (2) notice or constructive notice on the part of the [municipal body]; (3) the [municipal body]'s tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [municipal body's] custom was the "moving force" or the direct causal link in the constitutional deprivation.

*Stucker v. Louisville Metro Gov't*, No. 23-5214, 2024 WL 2135407, at *9 (6th Cir. May 13, 2024) (citing *Doe v. Claiborne Cnty. ex rel. Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir.

1996)). As is the case for establishing a custom based on inadequate training, the "pattern" requirement here "implies repetition of similar events." *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 503 (W.D. Ky. 2021) (citing *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013)); *see also Burgess*, 735 F.3d at 478 ("[A] custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating *similar* claims.") (emphasis added).

Codrington, however, does not identify or provide evidence of other instances of the same kind of fabrication of evidence rights violation by LMPD officers. Instead, Codrington only provides the evidence discussed above that Metro generally failed to properly supervise or train its officers. [DE 89 at 990–92].[1] Without evidence of similar fabrication-of-evidence violations which could have put Metro on notice, Codrington is unable to show the first element required to establish a custom by Metro of tolerance or acquiescence. As a result, there is no genuine dispute as to whether Metro had a custom of tolerance or acquiescence.

Because Codrington is unable to provide evidence to establish that Metro had an unlawful policy or custom which was the moving force behind the fabrication of evidence rights violation

[1] The passages of former LMPD Chief Steve Conrad's deposition which Codrington cites include a brief discussion about a lawsuit in 2014 involving officers allegedly lying in testimony about a stop. [DE 89 at 991; DE 117-1 at 2005–08]. The Court notes that Codrington does not cite Conrad's deposition to argue that this other incident of officers allegedly lying proves a pattern of officers fabricating evidence to support a custom of tolerance or a policy of inadequate training. Instead, Codrington only argues that Conrad's deposition "reveals a systemic failure by Metro to adequately train and supervise its officer regarding constitutional requirements." [DE 89 at 991]. Nonetheless, the Court notes that even if Codrington had argued this previous incident established a pattern, this single incident, which occurred four years prior to Codrington's arrest [DE 1 at 6; DE 117-1 at 2005], would be insufficient to demonstrate the pattern required to establish a custom of tolerance. *See, e.g.*, *Beard v. Whitmore Lake Sch. Dist.*, 244 F. App'x 607, 613 n.3 (6th Cir. 2007) ("Two incidents of unconstitutional searches over the course of five months does not demonstrate behavior 'so permanent and well settled as to constitute a custom or usage with the force of law.'") (quoting *Monell*, 436 U.S. at 691). It would also be insufficient to demonstrate the pattern required to establish a policy of inadequate training or supervision. *See, e.g.*, *id.* at 612–13 (holding that, as a matter of law, a single incident five months prior to the incident in question did not establish a pattern of repeated constitutional violations for the purposes of establishing a policy of inadequate training).

he alleges, there is no genuine dispute as to whether Metro had an unlawful policy and Metro is entitled to judgment as a matter of law.

## IV. CONCLUSION

Having considered the parties' filings and the applicable law, and being otherwise sufficiently advised,

**IT IS ORDERED** that Metro's Motion for Summary Judgment is **GRANTED** and Codrington's § 1983 *Monell* claim against Metro is **DISMISSED**.

Rebecca Grady Jennings, District Judge
United States District Court

September 21, 2026